IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDRE LIVINGSTON,<br>    Plaintiff,<br><br>    v.<br><br>JOHN DOE APPEL, et al.<br>    Defendant. | CIVIL ACTION<br><br><br>NO. 11-2764 |

MEMORANDUM RE CORRECTIONAL MEDICAL INC.'S MOTION TO DISMISS
AND LT. EDWARD APPEL AND WARDEN JULIO M. ALGARIN'S MOTION TO
DISMISS PLAINTIFF'S COMPLAINT OR, IN THE ALTERNATIVE FOR SUMMARY
JUDGMENT

Baylson, J.                                                                              Dec. 5, 2014

I.      Introduction

In a *pro se* complaint, Plaintiff Andre Livingston, a state prisoner, brings Eighth

Amendment claims for excessive force and failure to provide adequate medical treatment for the

resulting injuries against Defendants Warden Julio M. Algarin, ("Warden Algarin"), Lieutenant

Edward Appel ("Lt. Appel"), Correctional Medical Care, Inc. ("CMC"), and unidentified John

Doe guards of the Montgomery County Correctional Facility ("MCCF").  CMC, a private

company that provides medical care to prisoners at MCCF, has moved to dismiss for failure to

state a claim.  ECF 7, at 2.  Warden Algarin and Lt. Appel have moved to dismiss failure to state

a claim or, in the alternative, for summary judgment for failure to exhaust administrative remedies.

ECF 8.

II.     Facts and Procedural History

On July 15, 2009, Livingston had been sentenced in a Pennsylvania Common Pleas court

and was awaiting transfer to SCI-Graterford ("Graterford") from MCCF, where he had spent his

pretrial detention.   ECF 3, at 4–5; ECF 8, at 2 n.2.[1]   Livingston alleges that Lt. Appel along with unidentified John Doe guards handcuffed him near the MCCF gymnasium and "repeatedly . . . punched [his] face and head."   ECF 3, at 4.   Lt. Appel and the other guards then took Livingston to a nearby office, where Lt. Appel allegedly "spitted [sic] in [Livingston's] hair and on [his] face" and "took turns hitting" Livingston with the John Does.   *Id.*   After the assault, Livingston was sent to MCCF's medical department, which is operated by CMC.   *Id.*; ECF 7, at 2. His injuries included a "swollen left eye," "right temple area," and jaw, a "busted lip," four "cracked teeth," and "discoloration to the left and right sides of [his] face."   ECF 3, at 5. Nevertheless, Livingston alleges he did not receive any treatment "due to who the incident occurred with."   *Id.* at 4.   He also alleges that he asked to go to an outside hospital for his injuries but this request was refused.   *Id.*

The next day, Livingston was transferred to Graterford, which allegedly "almost denied" his entry to the institution because of his physical condition.   *Id.* at 5.   In the period immediately after his transfer, Livingston alleges that he had "limited access to paper and the law library."   *Id.* Livingston claims he was able to send a handwritten letter about the incident to Warden Algarin on August 14, 2009, but received no response until September 20, 2010.   *Id.* at 3, 5.

Livingston initiated this suit *pro se* on May 2, 2011.   CMC and Warden Algarin and Lt. Appel moved separately to dismiss on July 1, 2011.   ECF 7, ECF 8.   After the Court ordered Livingston to respond, Livingston requested appointed counsel.   ECF 9, ECF 11.   The Court

---

[1] The Court may take judicial notice of the criminal docket noting Livingston's July 1, 2009 sentencing. Criminal Docket at 1, *Pennsylvania v. Livingston*, No. CP-46-CR-0007602-2008 (Montgomery Cnty. Ct. Com. Pl. 2008), *available at* https://ujsportal.pacourts.us/DocketSheets/CPReport.ashx?docketNumber=CP-46-CR-0007602 -2008; *see S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999) ("To resolve a 12(b)(6) motion, a court may properly look at public records, including judicial proceedings, in addition to the allegations in the complaint.").

referred the case to the Prisoner Civil Right Panel and stayed proceedings pending appointment of

an attorney.   ECF 14.   After more than 18 months during which no attorney accepted

Livingston's case but Livingston did not seek to proceed *pro se*,[2] the Court lifted the stay on

August 5, 2014 and ordered him to proceed *pro se* if he wished to pursue his case and to respond to

Defendants' Motions to Dismiss.   ECF 22, ECF 23.   Livingston now proceeds *pro se*.[3]

## III.   Legal Standard

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court

must "accept all factual allegations as true, construe the complaint in the light most favorable to the

plaintiff, and determine whether, under a reasonable reading of the complaint, the plaintiff may be

entitled to relief."   *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal

quotation marks omitted).   To survive a 12(b)(6) motion, the complaint's "factual allegations

must be enough to raise a right to relief above the speculative level."   *Id.* at 234.   When a

complaint contains well pleaded factual allegations, "a court should assume their veracity and then

determine whether they plausibly give rise to an entitlement to relief."   *Ashcroft v. Iqbal*, 556 U.S.

662, 679 (2009) (reaffirming rationale set forth in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544

(2007)).   However, a court is "not bound to accept as true a legal conclusion couched as a factual

allegation."   *Id.* at 678 (internal quotation marks omitted) (citations omitted).   "Threadbare

---

[2] After requesting counsel in September 2011, Livingston informed the Court in October 2011 that he was not able to proceed *pro se* and requested a stay of the proceedings.   ECF 15.   Livingston's case, however, was not posted to the Prisoner Civil Rights Panel "extranet" site for review by potential counsel until October 2012.   ECF 17. The Court sent notices to Livingston in February, July, and October 2013 informing him that his case had not yet been selected by a member of the Prisoner Civil Rights Panel, and requesting that he file a notice with the Court if he still wished to proceed with his case.   *Id.*; ECF 18; ECF 20.   Livingston responded to each notice that he wished for the case to remain in suspense pending appointment of counsel.   ECF 16; ECF 19; ECF 21.

[3] Livingston has styled his response as a "Motion to Dismiss" Warden Algarin and Lt. Appel's motion.   The Court will treat this as a response in opposition.   *See Higgs v. Atty. Gen. of the U.S.*, 655 F.3d 333, 339 (3d Cir. 2011) (noting the Third Circuit's "policy of liberally construing *pro se* submissions" in order to "protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training" (internal quotation marks omitted) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir.2006))).

recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.*

IV.     **Analysis**

    A.     **Claims Against Warden Algarin**

Livingston alleges that he "reported the incident" to Warden Algarin by letter after the fact, and that his claims are "properly presented . . . due to the fact that [Warden Algarin] oversees the actions of staff" and "is the superintend[ent] who permits these individuals to commit such h[ei]nous acts." ECF 3, at 5; ECF 26, at 2. Livingston does not claim that Warden Algarin had personal knowledge of or directed the guards' or medical department's actions, and he does not refer to any MCCF policy or custom that posed an unreasonable risk of constitutional violations.

"Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). A government official in a supervisory role will be liable for subordinates' conduct only where he or she 1) directly participated in, personally directed, or had "actual knowledge and acquiescence" in subordinates' actions; or 2) demonstrated "deliberate indifference to known deficiencies in a government policy or procedure" that created "an environment in which there is an unreasonable risk that a constitutional injury will occur." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 320 (3d Cir. 2014); *McKenna v. City of Phila.*, 582 F.3d 447, 460 (3d Cir. 2009) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1988)). Livingston's claims against Warden Algarin will therefore be dismissed because they are based on a theory of *respondeat superior*, as there are no allegations against Warden Algarin with respect to his personal conduct.[4]

---

[4] Livingston also has failed to state a claim against either Warden Algarin or Lt. Appel in their official capacities under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)), because he has not claimed that an MCCF

**B.      Failure to Provide Medical Treatment**

As to CMC, Livingston claims that after the alleged beating, he was "sent to medical" with a "swollen left eye, right temple area . . . [and] jaw," a "busted lip," four cracked teeth, and "discoloration to the left and right sides" of his face.   He alleges he received no treatment for these injuries, and his request to be sent to an outside hospital was refused.   Nevertheless, he names no specific CMC personnel or John Does who refused to provide treatment, and CMC cannot be liable as an entity for any alleged constitutional violations unless they were caused by a "relevant . . . policy or custom."   *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 578 (3d Cir. 2003) (applying *Monell* to "a private company that provides health services to . . . inmates" (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978))).   Livingston has not pointed in his complaint to any policies or customs of CMC that resulted in denial of medical care.   His claims against CMC will therefore be dismissed.[5]

**C.      Injunctive Relief**

Livingston also requests injunctive relief "because [he] fear[s] that there may be retaliation . . . because [he] reported" these events.   ECF 3, at 5.   The Third Circuit has held that "an inmate's transfer from the facility complained of generally moots . . . equitable and declaratory claims."   *Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003) (citing *Abdul–Akbar v. Watson*, 4 F.3d 195, 197 (3d Cir. 1993)).   Livingston is no longer under Defendants' supervision.   *See Mohamad v. Smith*, 492 F. App'x 269, 273 (3d Cir. 2012) (explaining injunctive relief is unavailable where plaintiff is "no longer an inmate . . . and thus no longer interact[ing] with the

---

policy or custom played a part in the alleged violations of his rights.   *See Kentucky v. Graham*, 473 U.S. 159, 166–67 (1985) (explaining *Monell* requirement that a "'policy or custom' must have played a part in the violation of federal law" applies to official-capacity suits against individual government officials).

[5] Because Livingston has not alleged a claim of failure to provide medical treatment against the individual Defendants, Court need not reach the issue of whether Livingston has sufficiently alleged deliberate indifference to his serious medical needs.   *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

personnel he claimed were threatening him" (citing *Sutton v. Rasheed*, 323 F.3d at 248)).   Nor do

his allegations establish a "reasonable expectation" or "demonstrated probability" that he will be

transferred back to MCCF.   *See Oliver v. Thornburgh*, 587 F. Supp. 380, 381–82 (E.D. Pa. 1984).

Livingston's claim for injunctive relief will therefore be dismissed as moot.

### D.      Failure to Exhaust Administrative Remedies

Having dismissed Livingston's claims against Warden Algarin and CMC, the only

remaining claims are against Lt. Appel.[6]   Lt. Appel argues that Livingston's claims should be

dismissed because he failed to exhaust his administrative remedies, and moves in the alternative

for summary judgment on this issue.   Livingston admits in his Complaint that he did not properly

"follow each step of the administrative procedures available" because he did not file a formal

MCCF grievance within seven days after the incident.   ECF 3, at 3, 5.   He alleges, however, that

he "was unable to obtain the correct legal documents" and "had limited access to paper and the law

library" during multiple transfers between facilities immediately after the incident.   *Id.*   He

argues in his response that he was unable to send mail at any time before he sent his August 14,

2009 letter to Warden Algarin.

Although exhaustion is not a pleading requirement under the PLRA, a court may dismiss

claims if the complaint is clear on its face that the plaintiff did not exhaust available administrative

remedies.   *See Jones v. Bock*, 549 U.S. 199, 214–15 (2007).   Taking Livingston's allegation that

he was prevented from filing a formal grievance within the seven-day time limit to be true and

viewing them in the light most favorable to him, the Court concludes that he sufficiently alleges

that MCCF's grievance procedures were not "available."   *See Spada v. Martinez*, 579 Fed. App'x

---

[6] Livingston has also listed John Doe MCCF guards as defendants, but it does not appear that Livingston has
attempted to identify these guards in the three years since he filed his Complaint.

82, 85 (3d Cir. 2014) (holding administrative procedures unavailable where prison officials withheld grievance forms, causing grievance to be timebarred) (citing *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir.2003); *Brown v. Croak*, 312 F.3d 109, 113 (3d Cir. 2002)).

Lt. Appel has also submitted evidence that he contends warrant summary judgment on the issue of exhaustion.   ECF 8, at 13–14.   Livingston has submitted neither documents nor a sworn affidavit contradicting this evidence.   The Third Circuit has admonished that PLRA "exhaustion determinations [should] be made before discovery, or with only limited discovery."   *Small v. Camden Cnty.*, 728 F.3d 265, 271 n.5 (3d Cir. 2013).   Before converting a motion to dismiss to a motion for summary judgment, however, district courts must provide *pro se* incarcerated plaintiffs with "a short summary" of Rule 56 "that highlights the utility of a Rule 56(f) affidavit"[7] as well as "the effects of not filing any opposing affidavits."[8]   *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013); *Renchenski v. Williams*, 622 F.3d 315, 340–41 (3d Cir. 2010).   Rather than convert Lt. Appel's motion to dismiss to a summary judgment motion, the Court will order the parties to take discovery initially on the issue of exhaustion of administrative remedies within sixty days, with leave for Defendants to renew their motion for summary judgment on this issue at the end of that sixty-day period.

The Court suggests that within thirty (30) days, the parties serve requests for documents relevant to what MCCF administrative remedies were available to Livingston after his transfer from that facility, and whether Livingston availed himself of these remedies.   Additionally, the Court reminds the parties that a party moving for or opposing a summary judgment motion must

---

[7] Although these affidavits are often still referred to as "Rule 56(f) affidavits," "[a]s part of a general restyling of the Federal Rules of Civil Procedure in December 2007, the language of Rule 56(f) was amended and incorporated into Rule 56(d)."   *Pa. Dep't of Pub. Welfare v. Sebelius*, 674 F.3d 139, 157 (3d Cir. 2012)

[8] In fact, governmental defendants bear the initial responsibility for providing prisoner plaintiffs with this notice. *Renchenski v. Williams*, 622 F.3d 315, 340–41 (3d Cir. 2010).

submit evidence to support its factual positions, which may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."   Fed. R. Civ. P. 56(c).   An affidavit or declaration "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."   *Id.*   For an affidavit or declaration to be considered in deciding a motion for summary judgment, it must be either notarized before a notary public or contain the following statement in accordance with 28 U.S.C. § 1746:   "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.   Executed on (date).   (Signature)".   28 U.S.C. § 1746; Fed. R. Civ. P. 56(c).   If facts are unavailable to the non-moving party, that party may submit an affidavit under Rule 56(d) specifying reasons he or she cannot present facts justifying opposition to summary judgment.

## V.   Conclusion

For the foregoing reasons, Defendant CMC's Motion to Dismiss will be GRANTED, and Warden Algarin and Lt. Appel's Motion to Dismiss or, in the Alternative, for Summary Judgment will be GRANTED IN PART as to Warden Algarin and DENIED IN PART as to Lt. Appel. Plaintiff is granted leave to file an amended complaint that addresses the deficiencies enumerated in this opinion.   An appropriate order follows.

O:\CIVIL 11\11-2764 livingston v. appel\11cv2764 112014 MTD Memo.docx